Megan A. Chacon (SBN 304912)
chacon@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Ste. 1100
Newport Beach, CA 92660
Tel: (949) 623-7640 / Fax: (858) 678-5099

*Additional Counsel Listed at Signature Page*

Attorneys for Universal Services of America, LP
and Universal Protection Service, LP

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

UNIVERSAL SERVICES OF AMERICA, LP, AND UNIVERSAL PROTECTION SERVICE, LP

Plaintiffs,

v.

CHAD LEBARON, JIMMY SUNDAYS, KYLE EDDIE, AND CHERDLEYS, LLC,

Defendants.

Case No. 2:26-cv-12526

**COMPLAINT FOR:**

**(1) TRADEMARK INFRINGEMENT AND COUNTERFEITING [15 U.S.C. §§ 1114, 1117];**

**(2) FALSE DESIGNATION OF ORIGIN [15 U.S.C. § 1125(a)];**

**(3) TRADEMARK DILUTION BY TARNISHMENT [15 U.S.C. §§ 1114, 1125(c)]**

**(4) COPYRIGHT INFRINGEMENT [17 U.S.C. § 101, et seq.];**

**(5) TRADEMARK DILUTION UNDER CALIFORNIA LAW [BUS. & PROF. CODE § 14247]**

**(6) COMMON LAW TRADEMARK INFRINGEMENT;**

**(7) COMMON LAW TRADE LIBEL.**

**DEMAND FOR JURY TRIAL**

Plaintiffs Universal Services of America, LP and Universal Protection Service, LP (collectively, "Plaintiffs" or "Allied Universal"), as and for its complaint against defendants Chad LeBaron, Jimmy Sundays, Kyle Eddie, and Cherdleys LLC (collectively, "Defendants"), alleges as follows:

## INTRODUCTION

1. This action arises from Defendants' unauthorized use of Allied Universal's famous trademarks, copyrighted patch design, security uniforms, and related security credentials in a series of widely disseminated social media videos portraying an apparent Allied Universal security officer engaging in sexually inappropriate, predatory, criminal, and offensive conduct.

2. Defendants intentionally appropriated the identity, reputation, and goodwill of Allied Universal, one of the world's largest private security services providers, and used that identity as the central premise of multiple videos designed to generate attention, audience engagement, followers, subscribers, advertising revenue, and other commercial benefits.

3. In the videos at issue, Defendants repeatedly falsely portray an apparent Allied Universal security officer wearing Allied Universal-branded uniforms and patches while engaging in conduct that includes unwanted sexual touching, implied sexual assault, implied masturbation, abuse of apparent authority, and other sexually charged and offensive behavior directed toward a skateboarder portrayed by Defendant Jimmy Sundays.




4. Defendants further amplified the dissemination of the videos by republishing them to millions of followers across social-media platforms and by adding captions characterizing the depicted conduct as conduct for which the apparent security officer should be arrested.

5. Through these unauthorized depictions, Defendants have falsely associated Allied Universal and its brands with sexual misconduct, abuse of authority, predatory behavior, criminality, and other conduct fundamentally inconsistent with the trust, professionalism, and integrity upon which Allied Universal's business depends.

6. Defendants' unauthorized use of the Plaintiffs' trademarks, copyrighted patch artwork, and Plaintiffs' security credentials falsely associates Allied Universal with sexual misconduct, abuse of authority, predatory behavior, and criminal conduct.

7. Defendants' conduct has caused and threatens to continue causing substantial and irreparable injury to Allied Universal's reputation, goodwill, intellectual-property rights, and the public's perception of Allied Universal personnel and security credentials.

**THE PARTIES**

8. Plaintiff Universal Services of America, LP ("Universal Services") is a Delaware limited partnership with its principal place of business at Tustin Ave, Suite 650 Santa Ana, CA 92705.

9. Plaintiff Universal Protection Service, LP ("Universal Protection") is a California limited partnership with its principal place of business at 161 Washington Street, Suite 600, Conshohocken, PA 19428.

10. Universal Services is part of the Allied Universal family of companies, and Universal Services claims ownership of, registration rights in, and/or other enforceable interests in the intellectual property asserted in this action, including U.S. Copyright Registration No. TX 8-857-267.

11. Upon information and belief, Defendant Chad LeBaron, also known online as "Cherdleys" ("Defendant LeBaron"), is a resident of California and conducts business in this District.

12. Upon information and belief, Defendant Jimmy Sundays ("Defendant Sundays") is a resident of California and conducts business in this District.

13. Upon information and belief, Defendant Kyle Eddie ("Defendant Eddie") is a resident of California and conducts business in this District.

14. Defendant Cherdleys, LLC ("Defendant Cherdleys") is, upon information and belief, a California limited liability company with its principal place of business at 7848 Melita Avenue, North Hollywood, California 91605.

15. Upon information and belief, Defendant Cherdleys is engaged in the creation, production, publication, promotion, distribution, licensing, marketing, and monetization of digital entertainment content and social-media content. Defendant Cherdleys is associated with and controlled by Defendant LeBaron, who is listed as the Agent for Defendant Cherdleys per the California Secretary of State's business records.

## JURISDICTION AND VENUE

16. This is a civil action arising under the laws of the United States, including the Copyright Act, 17 U.S.C. §§ 101 et seq., and the Lanham Act, 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, [1332(a),] and 1338(a) and (b), as well as supplemental claims under the statutory and common law of the State of California.

17. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the copyright laws and trademark laws of the United States.

18. This Court has supplemental jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

19. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and 1400(a) because a substantial part of the events or omissions giving rise to the claims occurred in this District and because Defendants reside in and are subject to personal jurisdiction in this District.

## GENERAL ALLEGATIONS

### A. Allied Universal and Its Security Credential

20. Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

21. Established in 1957, Allied Universal is the world's largest private security and facilities services provider. Through its global organization, Allied Universal operates in at least 90 countries worldwide, offering clients the benefit of working with an approximately $18 billion enterprise supported by a workforce of around 770,000 employees globally, making it the third-largest employer in North America and seventh-largest employer in the world.

22. Allied Universal's staff work as armed and unarmed security guards, lobby ambassadors, and access control officers at thousands of high-profile and sensitive locations across the United States and internationally, including airports, hospitals, courthouses, shopping centers, and long-term care facilities, making trust in Allied Universal's care and professionalism an imperative to both Allied Universal and the public at large.

23. For these reasons, Allied Universal strictly controls the issuance, possession, and use of its uniforms, badges, patches, jackets, and related security credentials. These items serve not merely as branding but as indicators of authority and trustworthiness. Individuals displaying authentic, counterfeit, unauthorized, stolen, altered, or convincingly similar Allied Universal credentials may be perceived as legitimate security personnel and may thereby obtain access to restricted locations, influence members of the public, interfere with business operations, evade scrutiny, or otherwise exploit that appearance of authority for deceptive, unlawful, or dangerous purposes.

**B. Allied Universal Owns Valuable Intellectual Property**

24. Allied Universal's trademarks, logos, uniforms, patches, badges, and other source identifiers are valuable assets that signify the origin, sponsorship, and quality of Allied Universal's services. Because Allied Universal personnel regularly interact with members of the public and are entrusted with protecting people, property, and facilities, the ALLIED UNIVERSAL Marks have become associated with professionalism, trustworthiness, authority, security, and public safety.

25. To help protect its intellectual property, Allied Universal has sought to obtain and/or obtained copyright and trademark registrations with the United States Copyright Office and the United States Patent and Trademark Office ("USPTO").

26. Among the aforementioned intellectual property is the "Allied Universal Security Services Patch Design," Copyright Registration No. TX 8-857-267,

registered with the Copyright Office effective October 1, 2019 (the "Allied Patch Design"). A copy of this copyright registration is attached hereto as Exhibit 1 and incorporated herein by this reference.

27. The Allied Patch Design is prominently displayed on Allied Universal employee uniforms, security apparel, badges, patches, marketing materials, and related items associated with Allied Universal personnel.

28. Allied Universal also has longstanding U.S. trademark rights in the Allied Universal name and design marks (collectively, the "ALLIED UNIVERSAL Marks").

29. Allied Universal is the owner of the U.S. trademark registrations for ALLIED UNIVERSAL (Reg. Nos. 7307884, 6630054, 7159787, and 7877285). Attached are true and accurate copies of the registration certificates for U.S. Trademark Reg. Nos. 7307884, 6630054, 7159787, and 7877285 as Exhibit 2.

30. Allied Universal is the owner of the U.S. trademark registration for ALLIED UNIVERSAL (Reg. No. 5302678). Attached is a true and accurate copy of the registration certificate for U.S. Trademark Reg. No. 5302678 as Exhibit 3.

ALLIED UNIVERSAL SECURITY SERVICES 31. Allied Universal is the owner of the U.S. trademark registration for (Reg. No.5150269). Attached is a true and accurate copy of the registration certificate for U.S. Trademark Reg. No. 5150269 as Exhibit 4.

32. Through longstanding continuous use and promotion, the ALLIED UNIVERSAL Marks have become widely recognized by consumers as identifying Allied Universal and its high caliber security-related services.

33. Allied Universal has had substantial sales of its services under the ALLIED UNIVERSAL Marks through the regular channels through which security and facilities services are marketed, sold, contracted for, and delivered.

34. The ALLIED UNIVERSAL Marks symbolize trust, safety, professionalism, security, and authority and constitute valuable goodwill belonging exclusively to Allied Universal.

**C. Allied Universal's Attempts to Address Defendants' Deliberate Unauthorized and Disparaging Uses of Allied Universal's Intellectual Property**

35. Defendants, through the social media accounts and channels associated with the "Cherdleys" brand, have created, published, promoted, distributed, and monetized videos prominently featuring the ALLIED UNIVERSAL Marks, the Allied Patch Design, and Allied Universal security uniforms, patches, and related source-identifying features without Plaintiffs' authorization since at least as early as March of 2025. Defendants have used social media channels[1] to disseminate the infringing content to a vast audience numbering in the millions, thereby substantially increasing the reach, visibility, and harmful impact of their unauthorized use of Plaintiffs' intellectual property.







[1] Defendant LeBaron/Defendant Cherdleys have social media accounts at the following addresses: https://www.facebook.com/cherdleys, https://www.instagram.com/cherdleys, and https://www.youtube.com/c/Cherdleys. Defendant Jimmy Sundays' Instagram account can be accessed at https://www.instagram.com/jimmysundays. Defendant Kyle Eddie's Instagram account can be accessed at https://www.instagram.com/kyleddie.







36. Defendants did not select Plaintiffs' intellectual property at random. Rather, Defendants intentionally procured, acquired, reproduced, displayed, and/or utilized what appeared to be authentic, counterfeit, unauthorized, stolen, altered, and/or confusingly similar ALLIED UNIVERSAL uniforms, patches, and other source-identifying features because they immediately identify the wearer as an Allied Universal security officer and convey the authority, professionalism, trustworthiness, and public recognition associated with Plaintiffs and its personnel.

37. Upon information and belief, Defendants have refused and/or failed to identify the source of the uniforms, patches, badges, credentials, and other Allied Universal source-identifying features appearing in the videos described herein despite Plaintiffs' requests that they do so.

38. Accordingly, Plaintiffs are presently unable to determine whether the uniforms, badges, patches, credentials, and related source-identifying features appearing in Defendants' videos are authentic Allied Universal-issued materials, counterfeit reproductions, unauthorized reproductions, altered items, stolen items, confusingly similar imitations, or some combination thereof.

39. Regardless of their provenance, Defendants have used such items without Plaintiffs' authorization and in a manner intended to falsely portray the depicted individuals as Allied Universal security officers when they are not.

40. Defendants have continuously exploited the public recognition and goodwill associated with Allied Universal's intellectual property by falsely portraying an apparent Allied Universal security officer engaging in sexually inappropriate, predatory, abusive, offensive, and criminal conduct since at least as early as March of 2025.

41. On or about March 14, 2025, prior counsel for Allied Universal sent Defendants LeBaron and Cherdleys a letter titled "Notice of Copyright and Trademark Infringement" via email (the "Notice") that detailed Allied Universal's registered copyright and trademark rights, and requesting that Defendants "cease and refrain from any and all unauthorized use of the ALLIED UNIVERSAL trademarks or any other of Allied Universal's valuable trademarks, services marks, logos, trade dress and other source identifiers or any confusingly similar variations thereof and remove or delete all instances of same from the YouTube, Facebook, and Instagram videos."

42. The Notice further advised Defendants that their videos falsely portrayed and impersonated Allied Universal security officers while prominently displaying Allied Universal's trademarks and copyrighted Allied Patch Design.

43. A true and correct copy of the March 14, 2025 Notice is attached hereto as Exhibit 5.

44. Upon information and belief, Defendants received the Notice but failed and refused to remove all infringing content or otherwise comply with Allied Universal's demands.

45. On or about April 25, 2025, Allied Universal sent Defendants a follow-up demand letter advising Defendants that they continued to maintain infringing content online and that such content was causing ongoing damage to Allied Universal's reputation and goodwill.

46. The April 25, 2025 notice letter further advised Defendants that numerous viewers had been misled into believing the videos depicted authentic Allied Universal personnel and conduct. Viewers posted comments expressing concern, outrage, and criticism directed at Allied Universal and, in many instances, specifically tagged Allied Universal in response to the videos.

47. A true and correct copy of the April 25, 2025 Notice is attached hereto as Exhibit 6.

48. In addition to the demand letters described above, Allied Universal undertook substantial efforts to stop Defendants' unauthorized use of the ALLIED UNIVERSAL Marks, the Allied Patch Design, and Allied Universal's uniforms, patches, and related security identifiers.

49. Beginning no later than March 2025, Allied Universal submitted multiple infringement, impersonation, and/or intellectual-property complaints to various social-media platforms hosting Defendants' content, including Facebook, Instagram, YouTube, and other online services, requesting removal of videos and related content that unlawfully incorporated Allied Universal's intellectual property and falsely portrayed an apparent Allied Universal security officer. Attached are true and accurate copies of takedown requests submitted to YouTube and Instagram via email as Exhibit 7.

50. As a result of Allied Universal's enforcement efforts, certain social-media platforms determined that Defendants' content violated applicable policies and removed or disabled access to various infringing videos and posts. *See* Exhibit 6.

51. Defendants were aware, or reasonably should have been aware, that such removals occurred as a result of Allied Universal's enforcement efforts and objections to Defendants' unauthorized use of Allied Universal's intellectual property.

### D. Defendants Continue to Deliberately Infringe Upon Plaintiffs' Intellectual Property Rights

52. Despite receiving repeated notice through demand letters and other enforcement efforts, Defendants have continued to create, publish, distribute, repost, promote, and monetize content incorporating Allied Universal's trademarks, copyrighted works, uniforms, patches, and related source-identifying features.

53. For example, on or about October 4, 2026, Defendants uploaded and published a video to Instagram via the Instagram account @Cherdleys. In the video, an apparent Allied Universal security officer, portrayed by Defendant LeBaron, is seen yelling at a skateboarder (Defendant Sundays) before threatening and forcefully kissing the skateboarder. While the skateboarder attempts to escape the assault, the officer grabs the skateboarder's hips before violently humping the skateboarder from behind. As the skateboarder runs away, the apparent Allied Universal security officer pushes the skateboarder and runs to tackle the skateboarder's friend.










54. The video cuts to the skateboarder crying into his friend's arms and says through tears: "[he] kissed me, and humped me too. I hated it! He kissed me, look at [the recording]!" In response, the person recording the video says "yeah that sounds bad, I'm sorry" with low energy, and the friend comforting the skateboarder in his arms exclaims, "You don't sound empathetic at all. Like what the fuck?" The video then quickly ends with the friend and skateboarder walking away visibly shaken and upset.










55. As of October 21, 2026, the October 4, 2026 video has been viewed over 608,000 times on Instagram. Many of the comments on the video call out Allied Universal and question its involvement with the video.


145torachiid6 Typical Allied Universal Employee
1w Reply


weighdashitt Wait i work for allied and i dont remember this in the training video
1w Reply ···


Comments
331.amn 1w
bro i know it's a reel but its real what you do
Reply


Comments
goodguyvillain 1w
He got on a real Allied Security Shirt.
Reply

56. A collection of true and accurate screen captures of the October 4, 2026 video and comments are attached as Exhibit 8.[2]

57. On or about October 5, 2026, Defendants uploaded and published a shorter version of the October 4, 2026 video to Instagram via the Instagram account

[2] As of October 21, 2026, the video is still uploaded and available to be viewed at https://www.instagram.com/reels/DeFq5fKSVxp.

@Cherdleys, which includes Defendant Sundays as an actor and his Instagram account @jimmysundays as a tagged contributor.

58. As of October 21, 2026, the video has been viewed over 1.8 million times on Instagram.

59. Defendant Eddie's Instagram account @kyleddie is tagged in both the October 4th and October 5th videos.




60. A collection of true and accurate screen captures of the October 5, 2026 video are attached as Exhibit 9.[3]

[3] As of October 21, 2026, the October 5, 2026 video is still uploaded and available to be viewed at https://www.instagram.com/reel/DeFT2ERBc2G/.







61. On or about October 9, 2026, Allied Universal reported the videos to Instagram via the "Report" links associated with the individual videos, and submitted an intellectual property complaint regarding both videos to Instagram requesting removal of the videos and related content that unlawfully incorporated Allied Universal's intellectual property (the "Report"). Attached as Exhibit 10 is a true and accurate copy of the Report and the Instagram confirmation email for receiving the same.

62. Days later, on or about October 12, 2026, Defendants uploaded and published to Facebook a video of another apparent Allied Universal security officer talking to a skateboarder, again portrayed by Defendant Sundays. The security officer proceeds to take out his smartphone and begin recording the skateboarder's body, telling him that he admires the Defendant's kneecaps and is a photographer of men's kneecaps. The skateboarder and his friend are visibly creeped out and tell the officer they are leaving. The Allied Patch Design is prominently displayed throughout the video.

63. As of October 21, 2026, the video has been viewed more than 126,000 times via Facebook.

64. A collection of true and accurate screen captures of the October 12, 2026 video are attached as Exhibit 11.[4]










65. Later that day, on or about October 12, 2026, Defendants uploaded and published to Facebook a third video of another apparent Allied Universal security officer talking to a skateboarder, again portrayed by Defendant Sundays, wherein the Allied Universal security officer tells the skateboarder that they "don't need him skating here today," but that he can continue to skate if the skateboarder lets the officer "stroke it"—"I wanna watch it, I wanna stroke it while you skate," implying masturbation.

66. The sound of sirens can be heard in the distance, and the Allied Universal security officer says "my guys are coming to help me stroke it."

67. As of October 19, 2026, the second October 12 video has been viewed over 202,000 times via Facebook.

---

[4] As of October 21, 2026, the October 11, 2026 video is still uploaded and available to be viewed at https://www.facebook.com/share/r/1CMUKAbmvQ.

68. A collection of true and accurate screen captures of the October 12, 2026 Facebook video are attached as Exhibit 12.[5]

69. Defendants LeBaron, Sundays, and Cherdleys, LLC acted in concert in creating, filming, producing, publishing, promoting, distributing, and exploiting the videos described herein.

70. Upon information and belief, each Defendant had the right and ability to supervise, direct, approve, control, or participate in the infringing conduct alleged herein.

71. Upon information and belief, each Defendant knowingly induced, encouraged, materially contributed to, participated in, authorized, ratified, benefitted from, and/or exercised control over the infringing and unlawful conduct described herein.

72. Accordingly, each Defendant is jointly and severally liable for the acts alleged in this Complaint.

73. Upon information and belief, that Defendants intentionally selected and used Allied Universal's trademarks, patch design, uniforms, and security credentials because those identifiers are readily recognizable to consumers and immediately communicate that the wearer is an Allied Universal security officer. The effectiveness, commercial appeal, and audience engagement generated by Defendants' videos depend upon viewers recognizing the depicted individual as an Allied Universal security officer and associating the depicted conduct with Allied Universal and its personnel.

74. Upon information and belief, Defendants have intentionally exploited the substantial goodwill associated with the ALLIED UNIVERSAL Marks and Allied Universal's security credentials for their own commercial purposes, including

[5] As of October 21, 2026, the October 12, 2026 video is still uploaded and available to be viewed at https://www.facebook.com/reel/1073089672286483.

building audience engagement, increasing followers and subscribers, promoting their entertainment brand, driving traffic to monetized platforms, obtaining sponsorship opportunities, and generating other forms of commercial benefit.

75. The conduct portrayed in Defendants' videos is fundamentally inconsistent with the professionalism, integrity, trustworthiness, and authority associated with Allied Universal and its personnel. Through the repeated publication of such content, Defendants have associated the ALLIED UNIVERSAL Marks, the Allied Patch Design, and Allied Universal's security credentials with sexual misconduct, predatory behavior, abuse of authority, harassment, criminal conduct, and other offensive behavior.

76. Upon information and belief, numerous viewers understood and believed that the individuals depicted in Defendants' videos were actual Allied Universal security officers or that the videos accurately reflected the conduct of Allied Universal personnel. Defendants intentionally encouraged such beliefs by utilizing authentic-looking uniforms, patches, source identifiers, realistic social-media captions, and video formats designed to resemble genuine recordings of actual events, while failing to provide any meaningful disclaimer regarding Allied Universal's lack of involvement.

77. Upon information and belief, viewers have commented upon, shared, reacted to, and discussed Defendants' videos as though they depicted actual Allied Universal personnel and actual conduct attributable to Allied Universal. Numerous viewers expressed concern, criticism, outrage, and distrust toward Allied Universal as a result of the videos and, in many instances, specifically identified or tagged Allied Universal in connection with those reactions.

78. Defendants knew, or at a minimum acted with reckless disregard for the likelihood, that viewers would interpret the videos as depicting actual Allied

Universal personnel and conduct and would associate the conduct portrayed therein with Allied Universal, its employees, and its security services.

79. The videos falsely convey that Allied Universal security personnel engage in sexually inappropriate conduct, abuse positions of authority, harass members of the public, commit acts of sexual misconduct, and otherwise conduct themselves in an unlawful, unprofessional, or predatory manner. These portrayals are false and do not reflect the conduct, policies, standards, training, or practices of Allied Universal or its personnel.

80. Defendants intentionally utilized authentic, counterfeit, unauthorized, stolen, altered, and/or confusingly similar Allied Universal uniforms, patches, credentials, and related security identifiers in connection with the videos described herein in order to falsely portray the depicted individuals as Allied Universal security officers when they are not.

81. Whether authentic, counterfeit, unauthorized, stolen, altered, or confusingly similar, the uniforms, badges, patches, credentials, and related Allied Universal source-identifying features utilized by Defendants reinforced the appearance that the depicted individuals were Allied Universal security officers and strengthened the association between the conduct portrayed in the videos and Allied Universal and the ALLIED UNIVERSAL Marks.

82. The unauthorized use of such items is particularly concerning because Allied Universal uniforms, patches, credentials, and related security identifiers function not merely as branding, but as symbols of authority and public trust upon which clients, members of the public, and law-enforcement personnel routinely rely.

83. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continues to suffer damage to its reputation, loss of goodwill associated with the ALLIED UNIVERSAL Marks and Allied Patch Design, dilution and tarnishment of its intellectual property, consumer confusion, costs associated with

monitoring and enforcing its rights, costs associated with pursuing removals of infringing content, and other monetary and commercial injuries in amounts to be proven at trial.

**COUNT I**

**(Against All Defendants for Trademark Infringement and Counterfeiting Under the Lanham Act [15 U.S.C. §§ 1114 and 1117])**

84. Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

85. Plaintiffs are the owner of valid and subsisting United States trademark registrations for the ALLIED UNIVERSAL Marks, including without limitation U.S. Trademark Registration Nos. 6,630,054; 7,159,787; 5,302,678; and 5,150,269.

86. Plaintiffs have continuously used the ALLIED UNIVERSAL Marks in commerce in connection with security, protection, and related services and have developed substantial goodwill in those marks.

87. Defendants, without Plaintiffs' authorization, have used in commerce reproductions, copies, colorable imitations of, and confusingly similar versions of the ALLIED UNIVERSAL Marks and related source-identifying features in connection with the creation, publication, promotion, distribution, display, and monetization of online video content.

88. Defendants intentionally displayed and used the ALLIED UNIVERSAL Marks in conjunction with authentic, counterfeit, unauthorized, stolen, altered, and/or confusingly similar uniforms, patches, badges, credentials, and other source-identifying features associated with Allied Universal in order to portray the depicted individuals as Allied Universal security officers.

89. Defendants' use of the ALLIED UNIVERSAL Marks is likely to cause confusion, mistake, and deception among consumers and viewers.

90. Upon information and belief, consumers and viewers have in fact associated Defendants' content and conduct with Allied Universal and its personnel.

91. Defendants' unauthorized use of the ALLIED UNIVERSAL Marks constitutes trademark infringement in violation of 15 U.S.C. § 1114.

92. Defendants' conduct has caused and continues to cause Plaintiffs substantial and irreparable injury for which Plaintiffs have no adequate remedy at law.

93. Defendants LeBaron, Sundays, and Cherdleys, LLC each actively participated in, directed, controlled, authorized, induced, encouraged, materially contributed to, and benefitted from the infringing conduct described herein and are therefore liable for the trademark infringement alleged herein.

94. Defendants' infringement has been knowing, intentional, and willful.

95. Upon information and belief, Defendants LeBaron, Sundays, and Cherdleys, LLC each actively participated in, directed, controlled, authorized, induced, materially contributed to, benefitted from, and/or furthered the infringing conduct alleged herein and are therefore jointly and severally liable for such infringement.

**COUNT II**
**(Against All Defendants for False Designation of Origin [15 U.S.C. § 1125(a)])**

96. Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

97. Plaintiffs own valuable rights in the ALLIED UNIVERSAL Marks and related source-identifying features, including Allied Universal's uniforms, badges, patches, credentials, and other indicia identifying Allied Universal security personnel.

98. Defendants intentionally used Plaintiffs' trademarks and related source-identifying features in connection with the videos and content described herein.

99. Defendants' use of Plaintiffs' trademarks, uniforms, patches, credentials, and related source-identifying features falsely suggests, among other

things, that Defendants, the videos, the individuals depicted therein, and the conduct portrayed therein are affiliated with, connected to, sponsored by, approved by, endorsed by, or otherwise associated with Plaintiffs.

100. Defendants intentionally selected Plaintiffs' trademarks together with authentic, counterfeit, unauthorized, stolen, altered, and/or confusingly similar source-identifying features because those identifiers immediately communicate to viewers that the depicted individuals are Allied Universal security officers and convey the authority, professionalism, trustworthiness, and public recognition associated with Allied Universal and its personnel.

101. Defendants' use of Plaintiffs' trademarks and related source-identifying features is likely to cause confusion, mistake, and deception among consumers and viewers regarding the affiliation, connection, association, sponsorship, approval, endorsement, or authorization of Defendants' content by Plaintiffs.

102. Upon information and belief, viewers have in fact associated Defendants' videos and the conduct depicted therein with Allied Universal and its personnel.

103. Defendants' acts constitute false designation of origin, false association, and unfair competition in violation of 15 U.S.C. § 1125(a).

104. Defendants' conduct has caused and continues to cause Plaintiffs substantial and irreparable injury for which Plaintiffs have no adequate remedy at law.

105. Defendants LeBaron, Sundays, and Cherdleys, LLC each actively participated in, directed, controlled, authorized, induced, encouraged, materially contributed to, and benefitted from the false association and false designation of origin alleged herein and are therefore liable for such conduct.

106. Defendants' conduct has been knowing, intentional, and willful.

107. Upon information and belief, Defendants LeBaron, Sundays, and Cherdleys, LLC each actively participated in, directed, controlled, authorized,

induced, materially contributed to, benefitted from, and/or furthered the conduct alleged herein and are therefore jointly and severally liable.

**COUNT III**

**(Against All Defendants for Trademark Dilution by Tarnishment [15 U.S.C. § 1125(c)])**

108. Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

109. The ALLIED UNIVERSAL Marks are distinctive and famous and are widely recognized by consumers as identifying Plaintiffs and their security-related services.

110. Long before Defendants' conduct, Plaintiffs extensively promoted and used the ALLIED UNIVERSAL Marks and developed substantial goodwill associated with those marks.

111. Defendants began using the ALLIED UNIVERSAL Marks only after the marks had become distinctive and widely recognized.

112. Defendants have used the ALLIED UNIVERSAL Marks in connection with depictions of an apparent Allied Universal security officer engaging in sexually inappropriate conduct, sexual assault, implied masturbation, predatory behavior, harassment, abuse of authority, criminal conduct, and other offensive acts.

113. Defendants further utilized authentic, counterfeit, unauthorized, stolen, altered, and/or confusingly similar Allied Universal uniforms, patches, badges, credentials, and related source-identifying features in order to reinforce viewers' perception that the depicted individuals were Allied Universal security officers.

114. Whether authentic, counterfeit, unauthorized, stolen, altered, or confusingly similar, those items strengthened the association between the offensive conduct portrayed in the videos and the ALLIED UNIVERSAL Marks.

115. Defendants intentionally associated the ALLIED UNIVERSAL Marks with such conduct in order to attract public attention, generate audience engagement, increase viewership, strengthen the Cherdleys brand, and obtain commercial benefits associated with their online entertainment business.

116. Defendants' use of the ALLIED UNIVERSAL Marks creates negative associations with Plaintiffs, their personnel, and their services.

117. Defendants' conduct has impaired and is likely to continue impairing the reputation embodied in the ALLIED UNIVERSAL Marks.

118. Defendants' conduct constitutes dilution by tarnishment in violation of 15 U.S.C. § 1125(c).

119. Defendants LeBaron, Sundays, and Cherdleys, LLC each actively participated in, directed, controlled, authorized, induced, encouraged, materially contributed to, approved, ratified, and benefitted from the creation, publication, promotion, distribution, and dissemination of the tarnishing content described herein.

120. Upon information and belief, each Defendant knew or should have known that the videos associated the ALLIED UNIVERSAL Marks with sexually inappropriate conduct, sexual assault, predatory behavior, abuse of authority, harassment, criminal conduct, and other offensive acts.

121. Upon information and belief, each Defendant possessed the ability to supervise, direct, control, remove, edit, or prevent the continued publication and dissemination of the videos but instead continued to participate in and further the conduct alleged herein.

122. Accordingly, each Defendant is liable, jointly and severally, for the dilution and tarnishment of the ALLIED UNIVERSAL Marks alleged herein.

123. Defendants acted knowingly, intentionally, and willfully.

**COUNT IV**

**(Against All Defendants for Copyright Infringement [17 U.S.C. §§ 101 et seq.])**

124. Plaintiffs own all right, title, and interest in and to the copyrighted work entitled "Allied Universal Security Services Patch Design," U.S. Copyright Registration No. TX 8-857-267.

125. Plaintiffs' copyright registration predates the acts of infringement alleged herein.

126. Defendants had access to Plaintiffs' copyrighted work, including through Plaintiffs' uniforms, patches, security apparel, promotional materials, online materials, and other publicly available sources.

127. Without authorization, Defendants reproduced, displayed, distributed, publicly displayed, and/or utilized unauthorized reproductions of, derivative works based upon, and/or works substantially similar to Plaintiffs' copyrighted Allied Patch Design in the videos and content described herein.

128. Defendants' copying was intentional and undertaken with knowledge of Plaintiffs' rights.

129. Defendants continued their unauthorized use after receiving actual notice of Plaintiffs' copyright rights and infringement allegations.

130. Defendants LeBaron, Sundays, and Cherdleys, LLC each knowingly participated in, induced, encouraged, authorized, directed, controlled, materially contributed to, and benefitted from the reproduction, display, distribution, publication, and exploitation of unauthorized reproductions of, and/or works substantially similar to, Plaintiffs' copyrighted Allied Patch Design.

131. Upon information and belief, each Defendant possessed the practical ability to supervise, control, remove, edit, or prevent the continued publication and dissemination of the infringing content but failed to do so.

132. Accordingly, each Defendant is liable, whether directly, contributorily, vicariously, jointly, or severally, for the copyright infringement alleged herein.

133. Defendants' conduct infringes Plaintiffs' exclusive rights under 17 U.S.C. § 106.

134. As a direct and proximate result of Defendants' infringement, Plaintiffs have suffered damages and are entitled to recover their actual damages and Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504.

135. Plaintiffs are further entitled to recover statutory damages for willful copyright infringement, attorneys' fees, and costs as authorized by 17 U.S.C. §§ 504 and 505.

**COUNT V**

**(Against All Defendants for Trademark Dilution Under California Law [Cal. Bus. & Prof. Code § 14247])**

136. Plaintiffs reallege and incorporate by reference the foregoing paragraphs as though fully set forth herein.

137. Plaintiffs own valid and protectable rights in the ALLIED UNIVERSAL Marks by virtue of its federal trademark registrations, longstanding use in commerce, and extensive common-law rights.

138. The ALLIED UNIVERSAL Marks are distinctive and famous within California and throughout the United States. Established in 1957, Allied Universal is the world's largest private security and facilities services provider, operates in at least 90 countries, employs approximately 770,000 individuals worldwide, and is one of the largest employers in the world.

139. Through continuous use, advertising, promotion, and provision of security and protection services, the ALLIED UNIVERSAL Marks have become widely recognized by consumers, customers, employees, prospective employees, and members of the public as identifying Plaintiffs and their services.

140. Long before Defendants engaged in the conduct alleged herein, the ALLIED UNIVERSAL Marks had acquired substantial goodwill and were closely associated with trustworthiness, professionalism, authority, safety, security, and public confidence.

141. Defendants have used the ALLIED UNIVERSAL Marks together with authentic, counterfeit, unauthorized, stolen, altered, and/or confusingly similar Allied Universal source-identifying features in connection with videos portraying apparent Allied Universal security officers engaging in sexually inappropriate conduct, sexual assault, predatory behavior, abuse of authority, harassment, criminal conduct, and other offensive acts.

142. Defendants intentionally associated the ALLIED UNIVERSAL Marks with such conduct in order to attract public attention, increase audience engagement, expand the reach of the Cherdleys brand, and obtain commercial benefits associated with their online entertainment business.

143. Defendants' conduct creates negative associations with the ALLIED UNIVERSAL Marks and harms the reputation and goodwill embodied therein.

144. Defendants' conduct has diluted and is likely to continue diluting the distinctive quality of the ALLIED UNIVERSAL Marks through tarnishment within the meaning of California Business and Professions Code section 14247.

145. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered injury to the distinctiveness, reputation, and goodwill associated with the ALLIED UNIVERSAL Marks.

146. Unless enjoined by this Court, Defendants will continue to dilute and tarnish the ALLIED UNIVERSAL Marks and continue to cause injury to Plaintiffs.

147. Plaintiffs have no adequate remedy at law for the continuing injury to the distinctiveness, reputation, and goodwill associated with the ALLIED

UNIVERSAL Marks and will continue to suffer irreparable harm absent injunctive relief.

148. Plaintiffs are therefore entitled to injunctive relief and all other relief available under California Business and Professions Code Section 14247 and applicable law.

**COUNT VI**

**(Against All Defendants for Common Law Trademark Infringement)**

149. Plaintiffs reallege and incorporate by reference the foregoing paragraphs as though fully set forth herein.

150. Plaintiffs own valuable common-law rights in the ALLIED UNIVERSAL Marks arising from decades of continuous use, promotion, and widespread consumer recognition.

151. The ALLIED UNIVERSAL Marks identify Plaintiffs as the source of their security services and embody substantial goodwill belonging exclusively to Plaintiffs.

152. Defendants intentionally used Plaintiffs' trademarks and related source-identifying features without authorization in connection with the creation, publication, promotion, dissemination, and monetization of content distributed through Defendants' online entertainment business.

153. Defendants' use of Plaintiffs' marks is likely to cause and has caused confusion, mistake, deception, and false association concerning the source, sponsorship, affiliation, authorization, endorsement, or approval of Defendants' content.

154. Defendants' conduct has injured and continues to injure Plaintiffs' valuable goodwill and reputation.

155. Defendants' acts constitute common-law trademark infringement under California law.

156. Plaintiffs have suffered damages and are entitled to recover all available legal and equitable relief

**COUNT VII**

**(Against All Defendants for Trade Libel Under California Common Law)**

157. Plaintiffs reallege and incorporate by reference the preceding paragraphs as though fully set forth herein.

158. Through the videos and related content described herein, Defendants published statements, depictions, implications, and representations to third parties that expressly or necessarily conveyed that Allied Universal security personnel engage in sexually inappropriate conduct, sexual assault, harassment, abuse of authority, predatory conduct, criminal activity, and other unprofessional and offensive behavior.

159. By portraying an apparent Allied Universal security officer engaging in such conduct while displaying Allied Universal's trademarks, copyrighted patch design, uniforms, and related source-identifying features, Defendants further conveyed that Allied Universal's security services are performed by individuals who are unfit, untrustworthy, unprofessional, inadequately supervised, or otherwise unsuitable to provide security services to the public.

160. The depictions and implications described above disparage the quality, reliability, professionalism, trustworthiness, and safety of Allied Universal's security services as a whole.

161. Defendants published the foregoing statements, depictions, implications, and representations to millions of viewers through social-media platforms and other online channels.

162. The foregoing statements, depictions, implications, and representations concerning Plaintiffs, their personnel, and their services were false.

163. Defendants knew the foregoing statements, depictions, implications, and representations were false or acted with reckless disregard for their truth or falsity.

164. Defendants knew, or reasonably should have known, that viewers would believe and rely upon the representations conveyed by the videos because Defendants intentionally portrayed the depicted individual as an Allied Universal security officer through the use of Plaintiffs' trademarks together with authentic, counterfeit, unauthorized, stolen, altered, and/or confusingly similar uniforms, patches, and other source-identifying features.

165. Upon information and belief, viewers did in fact believe and rely upon the representations conveyed by Defendants' videos and associated the depicted conduct with Allied Universal and its personnel.

166. Upon information and belief, viewers reacted to the videos as though they depicted actual Allied Universal personnel and actual conduct attributable to Allied Universal, including by directing criticism, concern, outrage, and negative commentary toward Plaintiffs.

167. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered direct pecuniary harm, including injury to commercial reputation and goodwill, costs associated with investigating Defendants' misconduct, costs incurred pursuing takedown requests and enforcement efforts, costs incurred addressing consumer confusion, and other economic damages according to proof.

168. Defendants' conduct was a substantial factor in causing Plaintiffs' damages.

169. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damages in an amount to be proven at trial.

170. Defendants' conduct was knowing, intentional, malicious, oppressive, and carried out with conscious disregard of Plaintiffs' rights, entitling Plaintiffs to all available remedies under California law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Universal Services of America, LP and Universal Protection Service, LP respectfully request judgment against Defendants Chad LeBaron, Jimmy Sundays, Kyle Eddie, and Cherdleys, LLC, jointly and severally where applicable, and request that the Court award the following relief:

1. A judgment in favor of Plaintiffs and against Defendants on all claims for relief asserted herein;

2. A preliminary injunction, temporary restraining order if appropriate, and permanent injunction enjoining Defendants and all persons acting in concert with them from:

   a. using the ALLIED UNIVERSAL Marks, or any confusingly similar marks, symbols, names, logos, insignia, source identifiers, trade dress, uniforms, badges, patches, credentials, or other indicia of affiliation with Plaintiffs;

   b. copying, displaying, reproducing, distributing, creating derivative works from, or otherwise infringing Plaintiffs' copyrighted Allied Patch Design;

   c. publishing, displaying, distributing, reposting, transmitting, licensing, promoting, monetizing, or otherwise exploiting any content incorporating Plaintiffs' trademarks, copyrighted works, uniforms, badges, patches, credentials, or other source-identifying features;

   d. falsely representing, expressly or impliedly, that Plaintiffs sponsor, endorse, approves of, are affiliated with, or are otherwise connected to Defendants or Defendants' content;

e. engaging in any further acts likely to dilute, tarnish, disparage, infringe upon, or otherwise damage Plaintiffs' intellectual-property rights and goodwill;

3. An Order directing Defendants to remove and permanently delete all videos, posts, reels, shorts, clips, images, advertisements, promotional materials, and other content incorporating Plaintiffs' trademarks, copyrighted works, uniforms, badges, patches, credentials, or other source-identifying features from all websites, social-media platforms, and other online locations within Defendants' custody or control;

4. An Order requiring Defendants to deliver to Plaintiffs, or destroy at Plaintiffs' election, all authentic, counterfeit, unauthorized, stolen, altered, or confusingly similar Allied Universal uniforms, patches, badges, credentials, identification cards, security apparel, and other materials bearing or incorporating the ALLIED UNIVERSAL Marks or Plaintiffs' copyrighted Allied Patch Design that are within Defendants' possession, custody, or control.

5. An Order requiring Defendants to provide a detailed accounting of how, where and from whom it obtained each and every authentic, counterfeit, unauthorized, stolen, altered, and/or confusingly similar Allied Universal uniform, badge, patch, credential and other source-identifying item featured in, and for each item identify: (1) the date of acquisition; (2) the price paid for the item; (3) the name and contact information (including e-mail address, phone number and physical address) for the person, persons or entity from whom the items were obtained);

6. An accounting of all profits obtained by Defendants from the publication and dissemination of the infringing videos and an order that Defendants hold all such profits in a constructive trust for the benefit of Plaintiffs;

7. An award of Defendants' profits, gains, revenues, and other benefits attributable to the acts alleged herein, in an amount according to proof;
8. An award of Plaintiffs' actual damages sustained as a result of Defendants' conduct, in an amount according to proof;
9. An award of statutory damages for willful copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 504, in an amount authorized by law;
10. An award of enhanced damages, treble damages, and/or any other increased monetary relief available under the Lanham Act based upon Defendants' willful conduct;
11. An award of statutory damages for willful copyright infringement pursuant to the Copyright Act, 17 U.S.C. § 504, in an amount authorized by law;
12. An award of exemplary and punitive damages to the extent permitted by law;
13. Pre-judgment interest on all damages awarded by this Court;
14. An award for reasonable attorneys' fees and costs of suit incurred herein; and
15. Any such other and further relief as the Court deems just and proper.

Dated: October 26, 2026 FISH & RICHARDSON P.C.

By: */s/ Megan A. Chacon*

Megan A. Chacon (SBN 304912)
chacon@fr.com
FISH & RICHARDSON P.C.
4695 MacArthur Court, Ste. 1100
Newport Beach, CA 92660
Tel: (949) 623-7640 / Fax: (858) 678-5099

Cynthia J. Walden (*pro hac vice* forthcoming)
walden@fr.com
Katie Roche (*pro hac vice* forthcoming)
roche@fr.com

Anne Hartnett (*pro hac vice* forthcoming)
hartnett@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston , MA 02210
Tel: (617) 542-5070 / Fax: (617) 542-8906

*Attorneys for Universal Services of America, LP, and Universal Protection Service, LP*